We'll begin with Fantasia v. Montefiore, case number 222940. And we have Mr. Hummel for the Plaintiff Appellant, and I see you've reserved three minutes in rebuttal. You can get started whenever you're ready. Thank you, Your Honor, and may it please the Court. What this appeal boils down to is the phrase, specifically requests. Under a federal regulation, a hospital cannot use a patient's family member to interpret unless the patient specifically requests such assistance. Here, this decision should be reversed because the phrase, specific request, requires an express action, and there were none in this case. By relying on the Plaintiff's daughter, Michelle Bianchi, the hospital defendant violated the law. I want to focus on JA601 from the District Court's decision. Open quote, Plaintiff did not articulate through Ms. Bianchi, in writing or otherwise, a request for Ms. Bianchi to interpret. But then the District Court goes on to conclude that the Plaintiff specifically requested her daughter. That decision is wrong, and it's wrong for three independent reasons. First, the plain meaning of the regulation. Second, the DOJ's construction of the regulation. And third, if necessary, the overall record. Beginning with the plain meaning, this Court has stated that the plain meaning of language in a regulation governs. Here, the verb request signifies an express action, an act, or an expression of a desire. And the adverb specifically puts an emphasis on something being explicit. And once again here, even relying on JA601, there were no express actions in this case. All right, let me ask you, counsel, when you have sort of definitionally the patient in these scenarios, has some difficulty communicating, some form of language barrier or communication barrier, how does that fact, that factor, play into the specific request? For example, in this case, how would Ms. Fantasia have made the specific request on her own without the involvement of Ms. Bianchi? There are at least two ways. First, Ms. Fantasia, she could write a note saying, I request my daughter to interpret. Or second, the hospital could have offered a third-party interpreter, either in person or a video remote interpreter. And it's undisputed in this case that that did not happen. She was not offered an interpreter. She did not categorically refuse a professional interpreter.  And the district judge, I believe, made a factual finding that found Nurse Sinconin credible, and that when Nurse Sinconin approached Ms. Fantasia and said to Ms. Fantasia what's wrong, basically, Ms. Bianchi responded, she's dizzy, she's deaf, and I'll interpret for her. What was the appropriate response for Nurse Sinconin at that point? The appropriate response for Nurse Sinconin was to verify that this is what the patient wanted. And how would she have done that? By retrieving a third-party interpreter. So under that system, though, does the hospital have to get a third-party interpreter in every case simply to inquire about whether there is a specific request? That sounds like what you're telling me. Only if the patient is not expressly stating something in response. Throughout that conversation, I was trial counsel, and Nurse Sinconin did not testify that, first, Ms. Bianchi's statement was even interpreted for Ms. Fantasia. Second, that Ms. Bianchi's statement was not even, my mother wants me to interpret. And third, Nurse Sinconin testified that she made a decision to use the daughter because she felt that there was not enough time to retrieve the VRI or the video remote interpreter. So unless the patient is giving some other express action, there would be a need to verify that because the regulation is clear, the individual with the disability must specifically request the assistance. But aren't there two other nurses that spoke with the patient and her daughter about interpretation, two of whom were, in two of the conversations, the signing was done simultaneously for the nurses as well as before the patient. So she was seeing, the patient was seeing her daughter sign, I interpret for my mother. And I think in one of the instances, Ms. Wong asked if it was okay that the daughter, Ms. Bianchi, continued to interpret for her mother. Your Honor, I have two distinctions on there. Yes, Judge Bichetti mentioned Ms. Sally Wong, the physical therapist, and also Nurse Giordano. So to take those in turn. So for Nurse Giordano, there was no affirmative statement by Ms. Bianchi. She just testified, I usually interpret. And even Mr. Giordano said at trial, he made clear, she said she would usually interpret, not that she preferred to do so. That's JA 253. And JA 247, he made clear that they did not specifically say they wanted the daughter. Now, turning to Sally Wong, yes, she asked, is it okay? But again, going to the individual with the disability, making an express request, there was none. And even Sally Wong says at JA 418, she just assumed it would be okay because when the nurse beforehand told her they were signing, she just assumed that was the method of communication. Nowhere for any of those witnesses did anyone say that Ms. Fantasia specifically requested something. I understand what you're saying, but it was more than an assumption with respect to Ms. Wong. She asked if it was okay for the daughter to assist with interpretation, that the daughter agreed, and that this was all contemporaneously signed to the mother who did not object. Aren't we being a little more formalistic to say, if I ask, do you want your daughter to interpret, she says yes, you don't object. Instead, you're saying she has to say, I specifically request my daughter to interpret? Yes, and based on the way the regulation is written, the individual with a disability must make a specific request. I think it's fair to say in many settings, such as the hospital, there is an imbalance of power. It's a stressful and uncomfortable situation. And the purpose of federal anti-discrimination law is to make sure individuals with a disability have full and equal participation, that they're empowered to make affirmative choices. And Judge Roshon, I think an important aspect is, it wouldn't require the hospital to move heaven and earth to confirm this. If one person just said, Ms. Fantasia, is this what you want, I wouldn't be here right now. If they took one third-party interpreter and asked, is this okay, is this what you want, that would resolve the case. So you're not taking the position that she has to initially speak first, the patient has to initially speak first. You're taking the position that they could have even asked her, is this okay with you? I do think that the patient has to initiate something based on how the regulation is written, because it says the patient makes a specific request, then the accompanying adult agrees. But I think under either scenario, Your Honor, we would win. And I see my time has expired, and I'll come back to you on the model. Thank you very much. Thank you, Counsel. Mr. Breitenbach. Good morning, Your Honors. May it please the Court, I am Roy Breitenbach, and I'm with Harris Beach, and we represent the Appleese. In this case, appellant concedes that Ms. Bianchi was by the plaintiff's side for all of her waking hours during the 24-hour admission, that Ms. Bianchi interpreted all of the interactions with the hospital staff. Ms. Bianchi is a professional interpreter. They concede that she actually works professionally for the police department in White Plains. She actually has interpreted as a teacher for the New York City public school system, as well as New Jersey public school system. She has always, prior to this point, interpreted for her mother at every health care setting. After this admission, she continued to interpret for her mother at most health care settings. Ms. Bianchi admitted that her daughter did a good job interpreting, and Ms. Bianchi testified unchallenged that she believed that she was able to effectively communicate, that she was able to effectively communicate with the hospital staff. So if the plaintiff were required to show harm, there might be a problem, but I don't think that's the argument here, right? The question is the first – that sort of talks about the second and third elements of the three requirements. But what about the first element? What about the specific request? What I'm saying is we're simply here today because of what they say the regulation requires and the concept of what we would call magic words, that it has to be the plaintiff. That specifically request means it has to be that the plaintiff herself utters specific words of request. And I think here that when we look at the decision of Judge Brissetti after viewing all of the evidence, what he concluded was the two statements that your honors pointed to in Mr. Hummel's argument. First, to Ms. Sincone where she said, I am the daughter, I will interpret, she's deaf. And the second statement to Mr. Giordano that says, I usually interpret. That was done. At no point during this admission did Judge Brissetti found, was there any objection by either the mother or the daughter or any request for another interpreter, including there was testimony on the second day of the admission, towards the middle part of the entire admission, when somebody from the patient navigator went into the patient's room to talk about satisfaction with the stay. Nothing was raised about the interpreting. But there's nothing, the statute, sorry, does not say consent. It doesn't say the patient must consent to using the adult accompanying to interpret or not object to. It says specifically request. Those are different words than a lack of an objection or a consent. No question, Your Honor. But specific request, I think that hospital staff in this type of situation, in which as Your Honor pointed out, you have a patient who's coming in who has a communication barrier and also quite frankly is ill and there's a concern that she has a serious medical condition. When the daughter comes in and says she is deaf and I will interpret, interpretation starts and nobody complains about that situation. I think that the staff is entitled to assume that there was a specific request. Had Ms. Bianchi said, well, I'm not comfortable interpreting. Had the patient said, I don't want to have the interpreter. Had the patient shook her head. Had the patient written a note and said no. That would have been different. But based upon this circumstance, we think that it meets the definition of specific request. What about the policy that the hospital has that family members or friends of the person will not be used as interpreters unless specifically requested by that individual and after an offer of an interpreter, interpretation device at no charge to the person has been made by the facility. So that didn't take place. That didn't take place, Your Honor. That's good practice and the testimony was at trial that the people involved in this incident were counseled and reeducated because like a lot of things that happened, we wouldn't be here had they done that. So that's a different issue. I think with regard to the interpretation of the phrase specific request, we don't concede that the Department of Justice's interpretation has any weight. But even in their own statement, they say that the underlying issue is whether or not the patient freely and voluntarily agreed to the interpreter. That's what, there was a free and voluntary consent. And I think here given all of the circumstances, there was a free and voluntary consent here. The staff was entitled to see. You have a hospital admission where the daughter who interprets for her all the time says, I will interpret, I usually interpret, and in response to a direct question from the physical therapist, Ms. Wang, agrees to interpret. There is not any objection as the judge found. Neither Ms. Bianchi objected, nor Ms. Fantasia objected. Neither one of them ever asked for a different interpreter. That's what the factual findings were, and they remain undisturbed. No one had any objection to what occurred. There was an immediate interpretation, and certainly it is undisputed that with regard to the interpretation in front of Mr. Giordano, the second nurse, and in front of Ms. Wang, there was simultaneous interpretation of everything. But isn't the reason that we have the, or isn't the reason that the regulation provides for a specific request, because of things like hospital settings are very stressful settings, and perhaps there may be discomfort about sharing intimate details about your medical history or diagnoses that are being given to you with your family members accompanying you. There are all sorts of policy reasons why you want to be absolutely sure that the individual patient is, in the words of the regulation, specifically requesting that the accompanying adult interpret for them. And so aren't we throwing all those away by just saying the interpretation started, and she didn't say anything to the contrary, so we're fine. No, I think that this is a unique situation. You have a daughter who not just knows a little bit of sign. You have a daughter who's a professional interpreter, who's hired as an interpreter to act professionally and abided by the code of ethics of the interpreting profession. You have a situation in which she has always interpreted for her mother in a health care setting. You have an acknowledgment that she did a good job. And you have not just, you know, we're going to start to use a family member, and then that's it. You have a long track record, a 24-hour track record, where nobody said anything. And this is a daughter who, because she is an interpreter, as came out of trial, it's in the trial record, she's a disability rights advocate for her job. So she certainly had the means. She is not an uneducated person who didn't know and was kind of bamboozled into interpreting. But there's no dispute here that she was a competent interpreter and that she was able to do the job. But I think part of the record is also that she would have been very uncomfortable, for example, as any accompanying adult might be, to perhaps give very negative medical diagnoses to her mother. You know, what if the doctor had said something, and this is a hypothetical, you know, your mother has cancer. That might have been very difficult for an accompanying adult to translate in a way that an independent interpreter wouldn't have had those difficulties. And, again, another policy reason for why a specific request to ask for an interpreter is an important consideration. No doubt, and had she, but she did not express any of that discomfort during this admission. And I go back to, she is a rights advocate. She knows how to advocate for rights. You know, she could have said at some point, you know, when the diagnosis comes down, I really am uncomfortable with saying something that's bad. So at that point, I'd like to have an interpreter. But that's all powerful evidence in support of the second and third prongs. Is it also, is the argument that it's also sort of circumstantial evidence that, especially given the track record where I think Ms. Fantasia said, yes, I always bring her with me to interpret, is that circumstantial evidence that, in fact, her behavior constituted a specific request? Because, again, I'm going to drag you back to the first prong, because I think we're all okay on two and three.  I think that given the unique circumstances of this case, how it went down, you know, I know that Appellant tries to say specific means explicit. But there even was a question in the Department of Justice materials, was a concern was raised about a child. Does the same specific request mean that a child has to actually say it and not the caregiver? And the Justice Department said, no, that doesn't want to meet all the circumstances and everything. And I think that, you know, in this case, you have somebody whose daughter, whose her voice, as she says, says, I always interpret. I usually interpret. I will interpret for her. And there's not, and a long period of time collapses with no objection from either party by that. That, I think, goes, crosses the line into specific requests, given all the circumstances. And that's what Judge Persetti found out. This was a very unique case. Hospitals do not have a situation in most cases in which you have a family member who is an interpreter, right? And that's really going back to my introduction. What I'm saying is, is that, look, every, there was effective communication here from a professional interpreter. And there was never a complaint during the admission. So given that, to hold the hospital liable in this unique set of circumstances, we believe would be inappropriate. And, therefore, we urge the, we urge the affirmative. One final question, if that's okay. Can you address, then, the Department of Justice's statement of interest? And I understand we don't go there if we look at just the regulation on its face. But the Department of Justice even says that what's required here is a more affirmative, explicit request rather than what took place here. Well, I think, first of all, you know, the Department of Justice statement of interest was on the ADA claim, not on the Affordable Care Act claim. Same language. Okay. So that's number one. Number two, that statement of interest was made prior to the factual findings that there was never any rejection to the use of Ms. Spiatti or any specific request for an independent interpreter. And, finally, I go back to the freely and voluntary consent language that they talked about, which is at Joint Appendix 58. When they're talking about what the regulation means and what really the underlying purpose is. And when you look at that language of freely and voluntary, in this circumstances, I think it was reasonable for the hospital staff to conclude, in this circumstance, that there was free and voluntary agreement to use Ms. Spiatti as an interpreter. Thank you. Thank you, counsel. Thank you. Mr. Hummel, you have reserved three minutes. Thank you, Your Honor. May I proceed? Yes. Thank you very much. I have three points on rebuttal. The language of the regulation, the appellee's reference to magic words, and then the DOJ's statement of interest. First, the hospital cannot rewrite the regulation. It doesn't state, under the totality of the circumstances, it doesn't state this is what the patient wanted. It states the patient specifically requests such assistance. That's the way it's written. Certainly, Judge Miriam, as you pointed out, if this case were to be reversed and remanded, Judge Brachetti could say, okay, there's no specific request, but I find no harm here. But that's a damages issue. If he wants to award nominal damages, that's his decision. It doesn't affect liability in whether the regulation is violated. Second, about the magic words, I had referenced JA601. It's in the first paragraph of our open brief. It's mentioned nine times in our brief. It's not referenced in the appellee's brief at all. It wasn't referenced here today. Plaintiff did not articulate through Ms. Bianchi in writing or otherwise a request from Ms. Bianchi to interpret. She did nothing in this case. And again, all they had to do was verify that through an independent interpreter. And even more so, there's no testimony at trial that plaintiff specifically requested it. The attending doctor at JA153, he agreed explicitly plaintiff did not specifically request to use the daughter. He also said that he reviewed the medical record and neither the admitting doctor, the admitting resident, or the floor resident gave him any indication that there was a specific request. And again, Michael Giordano, one of the witnesses the judge relied on, this is JA247. Giordano, they didn't specifically say they wanted the daughter. The court, well, but the daughter said she, the daughter said, Giordano, said she usually interprets right. But she didn't say she'd rather, yes. That underscores that there was no express consent by Irma Fantasia. And that brings me to my final point about the DOJ. Yes, they issued a statement of interest in this case advocating for summary judgment in Ms. Fantasia's favor because Montefiore violated this regulation. Again, it's in the policy that there must be a specific request. The plain meaning shows that there should be an express action. That's tier one. But even if the court wanted to go further, the DOJ confirms it. JA57 and JA60, they say there must be, quote, express mutual agreement and express desire for and by the accompanying adult to interpret. There is no doubt here that this is not what Ms. Fantasia wanted. And consent is not unfamiliar to the hospital. They have consent forms. How is there no doubt that it's not what she wanted? That's different than she didn't ask for it. Is there something in the record that suggests she didn't want this? Other than the fact that she brought suit. Yes, let me amend slightly because I understand as the appellant I'm under the clear error standard. I would say that goes back to the damages point. That if Judge Brachetti does decide, you know what, I find this is what she still wanted, that still doesn't resolve that first problem. And, again, that goes to a damages point if Judge Brachetti as the fact finder assesses the evidence and finds out, despite the lack of a specific request, I find she was not harmed. But, again, looking at the overall record, JA601, she did nothing through her daughter in writing or otherwise to make this request. So you're saying a consent form would have been sufficient here if she says I consent to having my daughter do this? If she wrote something down. But what I meant was in the sense of hospitals always seek express consent from patients. They don't take the patient's word for it. Much in the same way in practice if I receive a settlement offer or Ms. Fantasia, who is now in her 90s, planning for her will, you know, there needs to be express communication between her and her state attorneys, me and her as her lawyer for settlement. Express consent is a constant fixture in the law. And you're saying that express consent could not have been had through the representations made by her daughter because she was communicating through her daughter ostensibly. Yes, and I think that's the important part of JA601 where Judge Brachetti even acknowledges plaintiff did not articulate through Ms. Bianchi, a request from Ms. Bianchi to interpret. So even Judge Brachetti did not look at anything that happened in this case as an express action either specifically from Ms. Fantasia or on her daughter's behalf. Thank you very much. I urge this court to reverse and remand. Thank you, counsel.